FILED'09 AUG 28 08:41USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

MATTHEW T. PRESTON,

                      Plaintiff,

      v.

BNSF RAILWAY COMPANY,
a Delaware corporation.

                      Defendant.

Case Number CV 08-3045-CL

**ORDER**

Clarke, Magistrate Judge:

Plaintiff Matthew T. Preston, an Oregon resident, brings this action for negligence against Defendant BNSF Railway Company ("BNSF"), a Delaware Corporation, for negligence in violation of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, et seq., and the Federal Safety Appliance Act (FSAA), 49 U.S.C. § 20301, et seq. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff filed this motion for partial summary judgment seeking "an Order establishing that railcar BNSF 402172 was 'in use' for purposes of the [FSAA] and that BNSF violated the FSAA and is strictly liable under [FELA]." (Pl.'s Mot. for Partial Summ. J. Re: FSAA Violation 1-2.) For the reasons set forth below, the motion is denied.

I.      **Standards for Summary Judgment**

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be

Order    2

granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

## II.     Facts

Plaintiff alleges he was injured while working on railcar BNSF 401272. The train originated in either Vancouver or Pasco, Washington. It traveled to Wishram, Washington, and then to Bend, Oregon. (Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Partial Summ. J. Re: FSAA Violation ("Pl.'s CSMF Re: FSAA") ¶ 2.) On January 7, 2008, Plaintiff, acting as conductor, and Tony Hessler, as engineer, reported to the Bend, Oregon depot to pick up the train. It was a mixed freight train, and Preston's crew added two locomotives. (Pl.'s CSMF Re: FSAA ¶ 3.)

The train received a Class 1 Brake Inspection and Test and a pre-departure safety appliance inspection at the point of origin (either Vancouver or Pasco). The safety appliance inspection included inspecting the safety appliances of the railcars, locomotives, and brakes and performing an air brake test. (Pl.'s CSMF Re: FSAA ¶ 4.) This is performed by a car man but may occasionally be performed by trainmen. (Pl.'s CSMF Re: FSAA ¶ 4.)

To continue on the freight train trip, Preston was to release the railcar hand brakes on the

Order   3

train and hook up the air hoses between the new locomotives and the first railcar. The
locomotive engineer completes a Class III brake test to make sure there is air throughout the cars.
Upon completion of the test, the train departs from Bend to continue its trip to Klamath Falls,
Oregon. (Pl.'s CSMF Re: FSAA ¶ 6.)

Preston alleges that he was injured on a hopper car, BNSF 402172, trying to release its
hand brake. (Pl.'s CSMF Re: FSAA ¶ 6.) BNSF disputes the nature and extent of Plaintiff's
injuries and whether the hand brake at issue was the mechanism that brought about Plaintiff's
rotator cuff tear. (BNSF Railway Company's Am. Resp. to Pl.'s Statement of Undisputed
Material Facts and Statement of Relevant Material Facts: SAA Violation ("Def.'s RCSMF Re:
FSAA") ¶7.) BNSF accepts, for the purposes of this motion only, that the hand brake starts at the
9 o'clock position and is released when it is moved to the 12 o'clock position, as Plaintiff asserts.
(Def.'s RCSMF Re: FSAA ¶ 7; Pl.'s CSMF Re: FSAA ¶ 7.)

Preston asserts that the hand brake would not release when the lever was properly moved
into the 12 o'clock position. He pulled on the lever to release the brake. He felt a twinge in his
left shoulder and pull on his right side. Preston believes that this action caused his injury. (Pl.'s
CSMF Re: FSAA ¶ 7.) BNSF disputes, however, the nature and extent of Plaintiff's injury and
whether the hand brake was the mechanism that brought about Plaintiff's rotator cuff tear. (Def.'s
RCSMF Re: FSAA ¶ 9.) BNSF accepts for the purposes of this motion only that Plaintiff felt a
twinge in his left shoulder. (Def.'s RCSMF Re: FSAA ¶ 9.)

Plaintiff asserts that while attempting to release the hand brake, he stood to the right side
of the hopper, facing it, and used his left hand to pull the release lever clockwise while holding
onto the hopper car with his right arm. (Pl.'s CSMF Re: FSAA ¶10.) Defendant clarifies

Order   4

Plaintiff's actions, "on the date of the incident, Plaintiff crossed over the end platform from left to right, faced the rear of the car, held a vertical bar with his right hand on the right, reached over the handbrake with his left arm and hand, and pulled the quick release lever from a 9 o'clock position to a 12 o'clock position." (Def.'s RCSMF Re:  FSAA ¶ 8A.[1]) Defendant refers to BNSF Trainmen, Yardmen & Engineer Rule S13.6.3 that states employees are to stand on the brake step or crossover platform to operate the hand brakes.  Employees are to apply hand brakes by standing on the left side of the brake with their left foot on the ladder run and right foot on the brake platform, grasping the ladder rung or top handhold with their left hand and operate the brake with their right hand.  (Def.'s RCSMF Re:  FSAA ¶ 9A.)  Plaintiff is not sure if his hand was on the vertical bar or the horizontal bar.  He asserts he did maintain three-point contact while attempting to apply the handbrake.  (Pl.'s Reply to Def.'s Additional Facts  ¶8.)

In releasing the handbrake in this manner, he could use both arms contracting to share the forces.  Prior to the incident, Preston injured his right shoulder and was still experiencing realted residual pain.  Preston felt a twinge in his left shoulder at this time, but he thought he had also pulled his right side muscles.  Preston was able to continue working and finished his shift.  (Pl.'s CSMF Re:  FSAA ¶ 10.)  Preston alleges that he suffered a 90 percent-plus tear on his left rotator cuff and other injuries though he did not realize the severity of his injuries and continued working.  (Pl.'s CSMF Re:  FSAA ¶ 10.)  BNSF disputes these facts.  (Def.'s RCSMF Re:  FSAA ¶ 10.)

Plaintiff also alleges that he had to turn the wheel counterclockwise.  Turning the wheel

---

[1]  Defendant added its additional relevant material facts to its RCSMF, its numbering beginning with ¶ 1. To avoid confusion, the court refers to these additional facts as ¶ 1A, ¶2A, etc.

Order    5

in this direction is necessary to release this type of hand brake when the release lever does not work. When Plaintiff turned the wheel, the resistance did not decrease, and it was difficult to turn the wheel. According to Plaintiff, the wheel should have provided less resistance the more it was counter-rotated, but this did not occur. A quarter turn allows the wheel to spin freely with less resistance. (Pl.'s CSMF Re: FSAA ¶ 11.) Defendant denies Plaintiff's statements on this topic. (Def.'s RCSMF Re: FSAA ¶ 11.)

Preston completed his work for the day and went home. After going to bed, he woke up with left shoulder pain which was severe enough that he went to the emergency room. (Pl.'s CSMF ¶ 12.) He was in considerable pain and given medication. (Pl.'s Reply to Def.'s Additional Facts ¶ 10.) Two weeks after the incident, Plaintiff had arthroscopic surgery on his left shoulder. (Pl.'s Reply to Def.'s Additional Facts ¶ 10.)

Plaintiff also received a medical examination from Dr. John G. Maurer on January 21, 2009. Plaintiff characterizes this as an adverse medical examination. (Pl.'s Reply to Def.'s Additional Facts ¶ 10.) Defendant explains, "Dr. Maurer noted the mechanism described by Plaintiff was that of a slow, gradual pull with no sudden change in mechanical linkages or in the forces applied to his left shoulder; that the surgical findings reveal an etiology consistent with degenerative changes rather than the product of recent trauma." (Def.'s RCSMF Re: FSAA ¶ 10A.)

Following his visit to the emergency room, he reported his injury in a "Employee Personal Injury/Occupational Illness Report." (Pl.'s CSMF Re: FSAA ¶ 12; Pl.'s Reply to Def.'s Additional Facts ¶ 2.) He stated he injured his rotator cuff while untying a brake and that the incident was caused by the improper maintenance of brake equipment due to a defective

Order   6

automatic release on the brake. ( Pl.'s Reply to Def.'s Additional Facts ¶ 2.)

Plaintiff acknowledged that he is required to report defective equipment to railroad officials. Equipment believed to have caused or have the potential to cause injury should be removed from service. (Def.'s RCSMF Re:  FSAA ¶ 2A.)  Defendant asserts that Plaintiff was required to report to the BNSF radio dispatcher that the hand brake allegedly injured his shoulder, but he did not.  Nor did Plaintiff immediately report to his supervisor that he believed there was something wrong with the handbrake.  Plaintiff did not report the condition of the hand brake to the replacement crew or hostlers who took control of the train and railcar following his shift.  (Def.'s RCSMF Re:  FSAA ¶ 3A, 4A, 5A.)

BNSF asserts that it conducted an inspection of the hand brake on the morning after Plaintiff reported the incident.  According to the inspection report, the hand brake was found to operate normally and to be in good condition.  (Def.'s RCSMF Re:  FSAA ¶ 1A.)  The Klamath Falls Yard BNSF car department conducted an automatic single car test, replaced a defective air brake valve, tightened the crossover, and repaired a side bearing.  No repairs involved the hand brake at issue.  (Def.'s RCSMF Re:  FSAA ¶ 6A.)

Defendant has produced and reviewed 71 pages of maintenance records reflecting the repair and maintenance history from October 16, 2001, through the date of the alleged injury. There have been no substantive repairs performed on the hand brake after 2008.  (Def.'s RCSMF Re:  FSAA ¶ 7A.)

Preston asserts this type of hand brake has continual problems in that a percentage of them fail to release properly, and this is a common occurrence.  Based on his personal experience, Plaintiff was not overly concerned about the problem with the hand brake release at

Order    7

the time. (Pl.'s CSMF Re: FSAA ¶ 13.) Defendant asserts BNSF is without sufficient information to confirm Plaintiff's personal experience and denies these statements and Plaintiff's assertion that he "did not think too much about the problems . . . ." (Def.'s RCSMF Re: FSAA ¶ 13.)

Plaintiff asserts that the brakes were "in emergency" on the train at the time of the alleged injury and when the original engines were uncoupled from the cars in order to insert two locomotives. Placing the brakes "in emergency" makes it easier to release railcar hand brakes. Preston alleges that although the brakes were "in emergency" it was not easier to release the brakes. (Pl.'s CSMF Re: FSAA ¶ 14.)

The train at issue here was on Cascan Track 1, next to the mainline. There are four tracks and the mainline at the Klamath Falls location. No yard crew was involved in the preparation to continue the train trip from Bend to Klamath Falls. Preston and the engineer were considered the transportation train crew for this train. (Pl.'s CSMF Re: FSAA ¶ 15-16.)

## III.    Plaintiff's Motion Is Denied

Plaintiff asks the Court to order (1) that the railcar was in use for the purposes of the FSAA and (2) that BNSF violated the FSAA in not providing efficient hand brakes and is strictly liable under FELA. (Pl.'s Mot. for Partial Summ. J. Re: FSAA Violation ("Pl's FSSA Mot.") 1.) Defendant does not dispute, for purposes of this motion, that the Railcar was "in use" at the time the Plaintiff claims he was injured. However, Defendant disputes that BNSF is strictly liable and argues that it is a question for the jury whether BNSF violated the FSAA and whether the alleged violation caused the alleged injury. (Def. BNSF Railway Company's Resp. to Pl.'s Mot. for Summ. J. Re: FSAA Violation ("Def.'s FSAA Resp.") 1-3.)

The complaint alleges an action under FELA, which is governed by federal law.  Urie v. Thompson, 337 U.S. 163, 174 (1949) ("What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local law for other purposes.  Federal decisional law formulating and applying the concept governs.").

**A.     Railroad Companies Are Subject to Strict Liability for Injuries to Their Employees Resulting From Their Negligence**

Congress enacted the FELA and FSAA to protect individuals who are injured resulting from accidents on interstate railroads and from defective railroad appliances.  The Supreme Court recognized the Acts' "humanitarian purposes [and the] accepted standard of liberal construction in order to accomplish those objects . . . ."  Urie, 337 U.S. at 180-81 (1949).  The FSAA was enacted for "all who need protection from dangerous results due to maintenance or operation of congressionally prohibited defective appliances."  Coray v. So. Pac. Co., 335 U.S. 520, 522-23 (1949).

The FSAA "impose[s] an absolute duty on railroad carriers to maintain the required safety equipment on their vehicles. . . .the [FSAA] provide the basis for the claim and the FELA provides the remedy."  Beissel v. Pittsburgh and Lake Erie R.R. Co., 801 F.2d 143, 145 (1986).  It is "supplemental to [FELA], having the purpose and effect of facilitating employee recover [sic], not of restricting such recovery or making it impossible."  Urie, 337 U.S. at 189.

The FSAA states, "a railroad carrier may use or allow to be used on any of its railroad lines – a vehicle only if it is equipped with . . . secure sill steps and efficient hand brakes . . ."  49 U.S.C. § 20302.  To recover for violation of the FSAA, a plaintiff must show (1) that the statute

Order   9

was violated and (2) that he suffered injuries resulting in whole or in part from the defective

equipment. 45 U.S.C. § 51[2]; Coray, 335 U.S. at 524.

**B.      There Are Genuine Issues of Material Fact Regarding Defendant's Strict**

**Liability Under FELA**

Plaintiff argues that Defendant violated the FSAA and is thus strictly liable for his

injuries.  He contends there are no genuine issues of material fact as to whether the car was in use

and whether Defendant equipped the car with an efficient handbrake, as required by statute.

(Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. Re: FSAA Violation ("Pl's FSSA Mem.") 1-2.)

Plaintiff also argues that causation should not be considered on summary judgment:  "[a]ny

dispute BNSF may have as to the magnitude or permanency of these injuries goes to the **measure**

of damages, not causation." (Pl.'s Reply in Supp. for Partial Summ. J. Re:  FSAA Violation

("Pl.'s Reply Re: FSAA") 4.)

Defendant disagrees.  BNSF does not dispute that the car was "in use" for purposes of this

motion.  It disputes that BNSF violated the FSAA by providing an inefficient handbrake and that

the handbrake at issue did not function in the normal manner.  (Def.'s FSAA Resp. 2-3.)  BNSF

also argues that it is for the jury to decide if Plaintiff's injury was caused by the hand brake.

**1.      Violation of FSAA**

The FSAA requires defendant to use vehicles that are equipped with an efficient

handbrake.  49 U.S.C. § 20302(a)(1)(B).  "Efficient means adequate in performance, producing

---

[2]  FELA states, "Every common carrier by railroad . . . shall be liable in damages to any person suffering
injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in
party for the negligence of any of the officers, agents or employees of such carreir, or by reason of any defect or
insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves,
or other equipment." 45 U.S.C. § 51.

properly desired effect.  Inefficient means not producing or not capable of producing the desired effect; incapable; inadequate."  Spotts v. Baltimore & O.R. Co., 102 F.2d 160, 162 (7th Cir. 1938).  A handbrake is inefficient if there is "a failure to function, when operated with due care, in the normal, natural, and usual manner."  Myers v. Reading, 331 U.S. 477, 483 (1947).

Plaintiff argues that the Court should determine, as a matter of law, that Defendant "equipped car BNSF 402172 with an inefficient hand brake."  (Pl.'s Mot. for Partial Summ. J. Re: FSAA Violation 2.)  Plaintiff contends that he "need not show an actual break or visible defect" to prove failure to function.  (Pl.'s Mot. for Partial Summ. J. Re:  FSAA Violation 2.)  Plaintiff cites Didinger v. Pennsylvania R. Co., 39 F.2d 798 (6th Cir. 1930), in which the court held that the plaintiff need not show the specific reason why the brake failed: "the fact that it did not hold demonstrates its inefficiency." Id. at 799.

Defendant argues that Didinger is distinguishable from the facts here and that the issue of the efficiency should go to the jury.  (Def. BNSF Ry. Co.'s Resp. to Pl.'s Mot. for Summ. J. Re: FSAA Violation 3,8.)  In Didinger, plaintiff appealed a directed verdict that was given after plaintiff gave his opening statement to the jury.  The Sixth Circuit evaluated whether the plaintiff had presented enough evidence such that a reasonable jury could find for the plaintiff.  The plaintiff presented evidence that the brake did not hold, and the court concluded the plaintiff's evidence was sufficient to proceed.

The Sixth Circuit did not, however, determine as a matter of law that the plaintiff had shown the brake to be inefficient but merely that the parties should proceed to trial.  "It is possible that, upon hearing, the defendant might have met the showing of inefficiency by evidence that the brake equipment was in good order, or by other evidence tending to show that

Order    11

the accident happened through the manner of handling." Id. at 800.

Other cases also support Defendant's argument.  The Supreme Court highlighted the important role of the jury in Myers v. Reading, Company, 331 U.S. 477 (1947), where the plaintiff sued for damages under FELA for personal injuries resulting from a hand brake that was not efficient under FSAA. Id. at 482. "A railroad subject to [FSAA] may be found liable if the jury reasonably can infer from the evidence . . . ." Id. at 482-83.

In Texas and Pacific Railway Company v. Griffith, 265 F.2d 489 (5th Cir. 1959), the Fifth Circuit explained that the plaintiff's credibility can be issue in the FSAA strict liability cases.  In order to recover under the FSAA, the plaintiff must show that the defendant violated the act.  Sometimes this violation can be shown simply by evidence of the brake's faulty performance.  Sometimes the proof of the violation is contingent on the plaintiff's testimony as to what happened.  When a violation is established by the plaintiff's testimony, credibility may be an issue for the jury.  A defendant may show that the brake properly worked before and/or after the incident to present evidence of credibility. The same evidence is not used once a violation has been established.  The Fifth Circuit explained, "[t]he evidence as to the condition before and after the accident is material in enabling the jury to decide whether the plaintiff's testimony as to the brake slipping was credible.  The evidence is immaterial, under the [FSAA] once the injured employee has shown non-compliance on the part of the railroad, that is, failure, to furnish an efficient, functioning brake." Id. at 493.

Similarly, in Richardson v. Consolidated Rail Corp., 17 F.3d 213 (7th Cir. 1994), superseded by amendment to Fed. R. Civ. Pro. R 26, the Seventh Circuit explained,

Order    12

It is true that Conrail would be liable if the hand brake did not properly function at the time of the incident, regardless of whether it worked properly before and after. However, Richardson bears the burden of proving that the hand brake was not working efficiently when he was injured, and his testimony is not conclusive. Because Conrail disputes whether the brake malfunctioned, it is allowed to present evidence of the brake's condition at times other than the incident in order to challenge Richardson's allegations. It was then up to the jury to make determinations of credibility and weigh the evidence in deciding whether Richardson met his burden in proving that the brake did not work efficiently at the time of the incident.

Id. at 217. The same principles apply here.

To grant partial summary judgment on this issue would result in the Court making a credibility determination. In support of his motion, Plaintiff provides his declaration of what occurred when he attempted to release the hand brake. (Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. Re: FSAA Violation 7.) This issue, however, is purely factual and not a matter for summary judgment. As Defendant points out, "Plaintiff thus wants the court to decide, as a matter of low, that BNSF violated the FSAA *on his word alone*." (Def. BNSF Ry. Co.'s Resp. to Pl.'s Mot. for Summ. J. Re: FSAA Violation 3.)

The Court agrees with Defendant; "plaintiff cannot establish an FSAA violation by BNSF as a matter of law based only on his testimony where . . . other competent evidence in the record shows that the hand brake functioned properly before and after plaintiff used it." (Def. BNSF Ry. Co.'s Resp. to Pl.'s Mot. for Summ. J. Re: FSAA Violation 8.)

### 2.  Causation of Injury

After the plaintiff shows the FSAA was violated, he must next show that he was injured in part by the defective equipment. BNSF argues the issue of causation is also for the jury to decide. Plaintiff argues that under FELA the standard is whether BNSF's violation played any

Order   13

part in causing Plaintiff's injuries.

The Court has denied summary judgment for Plaintiff on the issue of the FSAA violation. It is unnecessary to discuss causation.

## IV.    Conclusion

Genuine issues of material fact exist as to whether Defendant violated the FSAA and is strictly liable.  Plaintiff's motion is denied.

DATED this _____ day of  August, 2009

MARK D. CLARKE
United States Magistrate Judge

Order    14